Maurice B. VerStandig, Esq.
Bar No. MD18071
The Belmont Firm
1050 Connecticut Avenue, NW
Suite 500
Washington, DC 20036
Phone: (202) 991-1101
mac@dcbankruptcy.com
*Counsel for the Debtor*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 25-184-ELG |
| | ) | (Chapter 11) |
| Swain Landing LaPlata JC, LLC | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| Swain Landing LaPlata JC, LLC | ) | Adv. Case No. 25-10013-ELG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Catherine Swain and Percy Swain | ) | |
| | ) | |
| Defendants. | ) | |

**OPPOSITION TO DEFENDANTS CATHERINE SWAIN AN**
**PERCY SWAIN'S MOTION TO DISMISS ADVERSARY COMPLAINT**

Comes now Swain Landing LaPlata JC, LLC ("Swain Landing," the "Debtor" or the "Plaintiff"), by and through undersigned proposed counsel, pursuant to Local Rule 9013-1(d), and in opposition to the motion to dismiss (the "Motion," as found at DE #5) filed by Catherine Swain and Percy Swain (the "Swains" or "Defendants") states as follows:

I.   **Introduction**

The Motion asserts that a state court judgment cannot be avoided, under Title 11 of the United States Code (the "Bankruptcy Code"), because such would transform this Honorable Court

1

into a tribunal wrongfully conducting appellate review of the final judgments and orders of sister courts. The Swains also suggest the complaint in this case (the "Complaint," as found at DE #1) fails to state a claim for relief because the judgment the Debtor seeks to avoid is one sounding in equity and not law. The Swains are errant in both regards.

This is not the first—and, almost assuredly, will not be the last—bankruptcy case filed with transparent aims of avoiding a loss of property from a state (or federal) court order. Chapter 5 of the Bankruptcy Code provides multiple mechanisms for achieving such ends. And the doctrine announced by the Supreme Court in *Rooker v. Fidelity Trust Co.*, 263 U. S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U. S. 462 (1983) (the "*Rooker-Feldman* doctrine") is far from a bar to affording such relief. Critically, the avoidance of a state court judgment is not a merits-based review of the subject final order, tantamount to an appeal, but, rather, the objective recognition that (i) a judgment is simply one of myriad means through which a transfer of property may be accomplished and that (ii) the Bankruptcy Code allows such transfers to be unwound where certain statutory criteria are satisfied.

Equally, the two causes of action set forth in the Complaint—avoidance of a preference under Section 547 of the Bankruptcy Code ("Count I") and avoidance of a fraudulent conveyance under Section 548 of the Bankruptcy Code ("Count II")—are properly and adequately pleaded. The rationale for the underlying transfer of property—whether rooted in equity, law, or any combination thereof—is immaterial to analysis of the elements of each claim for relief. The question is not if a transfer of property occurred via gift, below-market sale, legal judgment, equitable judgment, or the scheming of Charles Ponzi; the question, under both Section 547 and Section 548, is simply one of statutory application. Congress' plain dictates are well addressed by

2

the allegations of the Complaint and, under prevailing pleading standards, both causes of action are sufficiently stated to survive the Motion.

## II. Standard

### a. Rule 12(b)(1)

A motion brought under Federal Rule of Civil Procedure 12(b)(1) attacks the existence, *vel non*, of a court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b) ("a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction. . .").

Where such a challenge is brought, "a plaintiff bears the burden of establishing that a court has jurisdiction over his claim. To determine whether jurisdiction exists, a court may 'consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Johnson v. Veterans Affairs Med. Ctr.*, 133 F. Supp. 3d 10, 13-14 (D.D.C. 2015) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103-04 (1998); *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007); quoting *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003)).

A challenge lodged under the *Rooker-Feldman* doctrine is properly understood to be a Rule 12(b)(1) challenge insofar as federal trial courts lack subject matter jurisdiction to hear an appeal from a state court judgment. *See Hunter v. United States Bank Nat'l Ass'n*, 698 F. Supp. 2d 94, 101 (D.D.C. 2010). *But see Kiviti v. Bhatt*, 80 F.4th 520, 533 (4th Cir. 2023) (holding bankruptcy courts are unmoored to traditional Article III jurisdictional limitations); *Bestwall Ltd. Liab. Co. v. Off. Comm. of Asbestos Claimants of Bestwall, Ltd. Liab. Co.*, 2025 U.S. App. LEXIS 19370, at *10 n.10 (4th Cir. Aug. 1, 2025) (reaffirming the holding of *Kiviti*).

3

b. **Rule 12(b)(6)**

Governing rules only require a claim for relief to set forth a statement of jurisdiction, a demand for relief, and, most pertinently, "a short and plain statement of the claim showing that the pleader is entitled to relief. . ." Fed. R. Civ. P. 8(a)(2).[1] A defendant, in turn, may challenge the sufficiency of such allegations through a motion brought under Federal Rule of Civil Procedure 12(b)(6). *See* Fed. R. Civ. P. 12 ("a party may assert the following defenses by motion . . . (6) failure to state a claim upon which relief can be granted. . .").

Where, as here, a defendant seeks dismissal on the theory that a pleading does not conform to the minimalistic rigors of Rule 8, the question is whether a complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Justice*, 436 F. Supp. 3d 354, 357–58 (D.D.C. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). "A claim is facially plausible when the pleaded factual content 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Citizens for Responsibility & Ethics in Washington*, 436 F. Supp. 3d at 357–58 (quoting *Iqbal*, 556 U.S. at 678). "The plausibility standard is not akin to a 'probability

---

[1] Claims invoking the "actual fraud" provisions of Section 548 invoke a heightened pleading standard under Federal Rule of Civil Procedure 9(b). *See, e.g.*, *Sher v. JPMorgan Chase Funding (In re Thornburg Mortg., Inc.)*, 610 B.R. 807, 824 (Bankr. D. Md. 2019) ("Because § 548(a)(1)(A) authorizes avoidance of a transfer based on actual fraud (i.e., the intent to hinder, delay, or defraud), pleading under this statute must meet this heightened standard.") (citing *In re AgFeed USA, LLC*, 546 B.R. 318 (Bankr. D. Del. 2016); *In re Licking River Mining*, 571 B.R. 241 (Bankr. E.D. Ky. 2017)). However, while Count II of the Complaint is brought under Section 548, the claim for relief is for constructive fraud, not actual fraud, and thusly outside the contours of the heightened mandate of Rule 9. The Debtor does maintain, though, that Count II of the Complaint would nonetheless satisfy Rule 9 scrutiny, given the level of specificity set forth in the pleading.

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

### III. Factual Allegations

Though analysis of a challenge to subject matter jurisdiction does permit exploration of facts outside the four corners of a complaint, *see Johnson*, 133 F. Supp. 3d at 13-14, the pertinent facts of this case—for jurisdictional purposes—do not appear to be in dispute:

1. The Debtor purchased real estate from the Swains, in 2002, delivering over $1.6 million—between cash and a promissory note (the "Note")—at closing. *See* Complaint, DE #1, at ¶¶ 12-15.

2. The Note was secured by a deed of trust in favor of the Swains (the "Deed of Trust"). *Id.* at ¶ 16.

3. The Swains thereafter sued for breach of contract, seeking recission of the transaction. *Id.* at ¶¶ 17-18, 21.

4. On or about March 19, 2025, the Circuit Court for Charles County, Maryland entered an order rescinding the conveyance of real estate from the Swains to the Debtor. *See* Exhibit A to Motion, DE #5-1, *passim*; Complaint, DE #1, at ¶¶ 20-21.[2]

5. The final order does not direct the Swains to return any monies to the Debtor. *Id.*

6. The Swains recorded the final order in the land records of Charles County, Maryland, thereby effectuating a transfer of the real estate back to themselves. *See* Exhibit A to Motion, DE #5-1, *passim*; Complaint, DE #1, at ¶ 23.

---

[2] The final order appears to have been signed on March 14, 2025 and docketed on March 19, 2025. The five day divide is not legally material to either of the causes of action in this case.

5

7. Less than 90 days later, Swain Landing petitioned for chapter 11 relief in this Honorable Court. *Id.* at ¶ 24.

IV. **Argument**

a. **The *Rooker-Feldman* Doctrine is Inapplicable to Chapter 5 Claims**

The Swain's first—and lengthier—contention is that the state court's final order cannot be avoided under Section 547 or Section 548 of the Bankruptcy Code because such would run afoul of the *Rooker-Feldman* doctrine and, as such, there is an absence of subject matter jurisdiction *sub judice*. Problematically, however, this argument conflates forbade collateral attacks on the merits of a state court judgment with permissible efforts to statutorily avoid state court judgments. The former is, no doubt, beyond the permissive jurisdictional confines of a bankruptcy court; the latter is part and parcel of a bankruptcy court's statutory charge.

As a starting point, the *Rooker-Feldman* doctrine is a byproduct of the fact "that appellate jurisdiction to reverse or modify a state-court judgment is lodged, initially by § 25 of the Judiciary Act of 1789, and now by 28 U.S.C. § 1257, exclusively in [the Supreme Court]." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005) (citing 1 Stat 85; 28 U.S.C. § 1257).

This Honorable Court has previously acknowledged the critical distinction between seeking appellate review of state court judgments and applying the tools of the Bankruptcy Code. The issue was directly addressed in a 2019 case where a chapter 13 debtor lost property to foreclosure pre-petition and then, somewhat stunningly, also lost almost $48,000.00 in foreclosure surplus funds because she and her son refused to vacate the premises and thereby exposed themselves to a holdover rent claim in favor of the foreclosure purchaser. *Johnson v. 408 Richwood, LLC (In re Johnson)*, 2019 Bankr. LEXIS 2947, at *1-3 (Bankr. D.D.C. Sep. 20, 2019). The debtor thereafter sought bankruptcy relief and sued to avoid the judgment awarding surplus

6

foreclosure proceeds to the foreclosure purchaser. *Id.* at *4. While a motion to dismiss that suit was ultimately granted on fact-specific grounds related to the debtor's inability to plead an entitlement to relief, Judge Teel expressly rejected an attack on subject matter jurisdiction under the *Rooker-Feldman* doctrine:

> The debtor's preference claim is not barred by the *Rooker-Feldman* doctrine: there is no need to review the Superior Court's decision to decide whether the transfer is a preference. Similarly, there are no issues that have been decided by the Superior Court that would preclude the court, by reason of collateral estoppel, from deciding whether the elements of a preference exist here.

*Id.* at *14-15.

Nor is *Johnson* an outlier. Other courts have held, seemingly uniformly, that the *Rooker-Feldman* doctrine is not a bar to the bringing of chapter 5 claims because such causes of action are not efforts to seek appellate review of the merits, *vel non*, of a state court judgment but, rather, the mere exercise of powers expressly enumerated in the Bankruptcy Code. As explained by the United States Court of Appeals for the Ninth Circuit:

> The *Rooker-Feldman* doctrine has little or no application to bankruptcy proceedings that invoke substantive rights under the Bankruptcy Code or that, by their nature, could arise only in the context of a federal bankruptcy case. In the exercise of federal bankruptcy power, bankruptcy courts may avoid state judgments in core bankruptcy proceedings, may modify judgments, and, of primary importance in this context, may discharge them.

*Sasson v. Sokoloff (In re Sasson)*, 424 F.3d 864, 871 (9th Cir. 2005) (citing *Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1079 (9th Cir. 2000); 11 U.S.C. §§ 544, 547-549; 727; 1129; 1141; 1325; 1328). *See also In re S-Tek 1, LLC*, 625 B.R. 519, 525 (Bankr. D.N.M. 2020) ("Although Rooker-Feldman prevents federal courts from in effect acting as an appellate court to review the merits of or to modify a state court judgment or order, it does not apply to override the authority of bankruptcy courts to apply provisions of the Bankruptcy Code that affect state court judgments."); *In re Miller*, 2009 Bankr. LEXIS 3351, at *11 (Bankr. D. Mass. Oct. 16, 2009) ("The

7

*Rooker-Feldman* doctrine is not applicable to Miller's adversary proceeding because Miller does not, as required by the doctrine, invite this Court's review and rejection of the state court judgment. Miller's argument in the adversary proceeding is not that the state court judgment was incorrect. Rather, her argument is that the state court judgment is avoidable as a fraudulent transfer under § 548 of the Bankruptcy Code. This Court's adjudication of Miller's § 548 fraudulent transfer claim, in which she alleges that her state court claims were fraudulently transferred through the agreement for entry of judgment in the action, does not amount to an appeal of the state court in violation of the Rooker-Feldman doctrine.") (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); 11 U.S.C. § 548); *Funches v. Household Fin. Consumer Disc. Co. (In re Funches)*, 381 B.R. 471, 484 (Bankr. E.D. Pa. 2008) ("*Rooker-Feldman* has never had much impact in bankruptcy cases. Congress' power under Article I of the Constitution to enact uniform bankruptcy laws such as the Bankruptcy Code necessarily means that state court judgments will be treated differently, with less or even no effect, then they would be treated in state court. This is not regarded as 'second-guessing' the merits decided by the state court, which is all that *Rooker-Feldman* seeks to prevent. It is merely a necessary incident of enforcing the provisions on the Bankruptcy Code.") (quoting *In re Ehmke*, 2006 U.S. Dist. LEXIS 47995, 2006 WL 1994904 at *5 (E.D.N.Y. July 14, 2006)).

Critically, the Debtor is not alleging the Circuit Court for Charles County, Maryland to have legally erred in entering the recission judgment. To the contrary, the underlying merits, *vel non*, of that judgment are not in any way implicated by the Complaint. Rather, the Debtor is simply alleging that the final order of the state court effectuated a transfer of property that, under the rigors of Section 547 and Section 548 of the Bankruptcy Code, is avoidable in nature. Whether the Debtor wins or loses these causes of action will not in any way turn on the wisdom of the state court

8

judgment or the lack thereof; the outcome of these claims, rather, will turn on analysis of the statutory criteria set forth in the Bankruptcy Code.

### b. The Complaint Adequately Pleads Claims for Relief

The Swains' second argument for dismissal comes under Rule 12(b)(6), asserting the Complaint does not state a claim for relief because the state court judgment is grounded in equity and not law. In so doing, however, the Defendants fall into the very trap they previously urge this Honorable Court must avoid: assessing the rationale, *vel non*, of the state court judgment in lieu of the objective ramifications of the state court judgment. It matters not whether the Swains were awarded the real estate through an equitable entitlement to recission, on a legal theory of contractual breach, or even as an in-kind form of punitive damages. The only relevant inquiry for Count I and Count II is if the effect of the state court judgment is such that avoidance rights are statutorily invoked. And such is assuredly true here.

### i. Avoidable Preference

Section 547 of the Bankruptcy Code is, somewhat notoriously, one of the few (if any) federal statutory provisions, outside of Title 26, that demands purely innocent persons part way with property they have lawfully and properly received. An avoidance action is not a claim in tort, is not a punitive measure, and is not intended to deter wrongful conduct. An avoidance action, rather, is a mere recognition that the underlying purposes of bankruptcy may be frustrated by pre-petition actions that place one or more creditors in situations preferable to those of other creditors.

To prevail on a claim for avoidance of a preferential transfer, a debtor-in-possession must show that there existed a transfer of property:

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

>(3) made while the debtor was insolvent;
>
>(4) made—(A) on or within 90 days before the date of the filing of the petition; or (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
>(5) that enables such creditor to receive more than such creditor would receive if— (A) the case were a case under chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).[3]

Here, the Complaint alleges that the Swains were creditors of the Debtor, as the holders of a $1.2 million promissory note on which the Debtor was obligated. *See* Complaint, DE #1, at ¶¶ 15, 26. Similarly, the Complaint alleges this debt to have been antecedent in nature, with the promissory note having matured on October 31, 2023, *id.* at ¶ 27, and the state court judgment having not been entered until March 19, 2025, *id.* at ¶ 20. The pleading also establishes that Swain Landing was insolvent when the state court judgment was entered, with the Debtor "facing litigation from a third party for several hundred thousand dollars, being obligated to incur legal fees to defend the subject third party litigation, and being without monies to pay its debts as they came due." *Id.* at ¶ 28. So, too, was the state court judgment entered within 90 days of the Debtor seeking bankruptcy relief. *Id.* at ¶ 29. And since the Swains were able to regain the real estate without having to repay the hundreds of thousands of dollars they had been already paid by the Debtor, despite the property having a value well in excess of the residual debt due and owing under the Note, the judgment allowed the Swains to come out well better than would have if the judgment had not been entered and a chapter 7 case had first been filed. *Id.* at ¶¶ 15, 21, 30.

---

[3] There are certain statutory exceptions to these elements. 11 U.S.C. § 547(c). Insofar as the Swains do not assert any such exception to be applicable, none are discussed herein.

The Motion suggests that none of this matters because ". . . an order awarding rescission of a contract is wholly independent of the existence of a debtor-creditor relationship, a requirement to establish a preference." Motion, DE #5, at p. 6. In so asserting, however, the Defendants overlook that the remedy of rescission is foundationally premised upon a contract having been breached in the first instance or, at minimum, a contractual obligation remaining extant and unfulfilled: "Where . . . there has been a material breach of a contract by one party, the other party has a right to rescind it." *Wash. Homes, Inc. v. Interstate Land Dev. Co.*, 382 A.2d 555, 563 (Md. 1978) (quoting *Plitt v. McMillan*, 223 A. 2d 772 (Md. 1966); citing *Foster-Porter Ent'prises v. De Mare*, 81 A. 2d 325 (Md. 1951); *Vincent v. Palmer*, 19 A. 2d 183 (Md. 1941); *Ady v. Jenkins*, 104 A. 178 (Md. 1918)).

To be sure, the Swains would not have been entitled to the equitable remedy of recission *but for* the fact that they were creditors of the Debtor. And it thusly stands to reason that their receipt of such equitable relief was not, as they urge, "independent of the existence of a debtor-creditor relationship," but, rather, elementally reliant upon the existence of a debtor-creditor relationship. Or, stated more simply, if the Debtor was not in breach of the Note (or, at irreducible minimum, did not still owe money on the Note), there is no cognizable legal theory upon which the Swains would have been able to obtain recission of the real estate transaction.

Perhaps more importantly, though, the *bona fides* of the state court judgment are irrelevant—for the precise reasons observed by the Swains in their invocation of the *Rooker-Feldman* doctrine. Section 547 of the Bankruptcy Code does not contain an exception for property losses occasioned by equitable decrees any more than it contains an exception for property losses occasioned by legal decrees. The sole pertinent inquiries are those set forth *supra*, and the

11

Complaint assuredly alleges—in detail more-than-sufficient to comport with *Iqbal* and *Twombly*—that the Swains were creditors of the Debtor at the time the state court judgment was entered.

### ii. Fraudulent Conveyance

The Motion next suggests that Count II must be dismissed because a state court recission judgment necessarily furnishes reasonably equivalent value and cannot be second-guessed without running afoul of the *Rooker-Feldman* doctrine. In so arguing, however, the Defendants miss that just because a state court deemed something *equitable* does not mean a state court viewed the remedy as conferring value of any equivalence—much less reasonable equivalence.

The Bankruptcy Code allows a debtor-in-possession to avoid a constructively fraudulent conveyance if (i) the debtor "received less than a reasonably equivalent value in exchange for such transfer or obligation," 11 U.S.C. § 548(a)(1)(B)(i); and (ii) various other criteria are satisfied, 11 U.S.C. § 548(a)(1)(B)(ii).[4]

In assessing whether or not a transaction conferred reasonably equivalent value, such is a question to be determined by a trier of fact, not on a motion to dismiss. *See, e.g.*, *Alberts v. HCA Inc. (In re Greater Se. Cmty. Hosp. Corp.)*, 2007 Bankr. LEXIS 6, at *28 (Bankr. D.D.C. Jan. 2, 2007) ("The court agrees with the Defendants that 'in the analysis of reasonably equivalent value it is necessary to keep in mind that 'reasonably equivalent value is a question of fact that must be evaluated as of the date of the transaction.'") (quoting *Creditor's Comm. of Jumer's Castle Lodge, Inc. v. Jumer (In re Jumer's Castle Lodge, Inc.)*, 329 B.R. 837, 845 (Bankr. C.D. Ill. 2005) (quoting *Daley v. Chang (In re Joy Recovery Tech. Corp.)*, 286 B.R. 54, 75 (Bankr. N.D. Ill. 2002))). *See also Lisle v. John Wiley & Sons, Inc. (In re Wilkinson)*, 196 F. App'x 337, 341 (6th Cir. 2006)

---

[4] Since the sufficiency of the Debtor's allegations of the other elements of this claim is not attacked in the Motion, they are not discussed herein.

("Here, the only element in dispute is whether Wilkinson received reasonably equivalent value in exchange for the payment to Wiley. This is a question of fact.") (citing *In re Humble*, 19 F. App'x. 198, 200 (6th Cir. 2001); *In re Erlewine*, 349 F.3d 205, 209 (5th Cir. 2003); *In re Image Worldwide, Ltd.*, 139 F.3d 574, 576 (7th Cir. 1998)); *Doeling v. O'Neill (In re O'Neill)*, 550 B.R. 482, 509 (Bankr. D.N.D. 2016) ("Whether a transfer is made for reasonably equivalent value is a question of fact.") (citing *Meeks v. Don Howard Charitable Remainder Trust (In re S. Health Care of Ark., Inc.)*, 309 B.R. 314, 319 (B.A.P. 8th Cir. 2004) (citing *Jacoway v. Anderson (In re Ozark Rest. Equip. Co.)*, 850 F.2d 342, 344 (8th Cir. 1988))); *Ahlgren v. Dailey (In re Schnoor)*, 510 B.R. 868, 874 (Bankr. D. Minn. 2014) ("Whether a transfer is made for reasonably equivalent value is a question of fact.") (citing *Lindquist v. JNG Corp. (In re Lindell)*, 334 B.R. 249, 253 (Bankr. D. Minn. 2005) (citing *Jacoway*, 850 F.2d at 344)); *Quinn v. Elite Custom Transporters & Motorcoaches, LLC*, 2011 U.S. Dist. LEXIS 52362, at *16 (D. Minn. May 16, 2011) ("Whether a party received reasonably equivalent value is a question of fact. 'The court must consider all aspects of the transaction and 'carefully measure the value of all benefits and burdens to the debtor.' '") (citing *Jacoway*, 850 F.2d at 344; quoting *United States v. Spencer*, 2005 U.S. Dist. LEXIS 28257, 2005 WL 2648688, at *3 (D. Minn. Oct. 17, 2005)); *Tex. Truck Ins. Agency v. Cure (In re Dunham)*, 110 F.3d 286, 289 (5th Cir. 1997) ("... the question of 'whether fair consideration [now 'reasonably equivalent value'] has been given for a transfer is 'largely a question of fact, as to which considerable latitude must be allowed to the trier of the facts.' '") (quoting *Mayo v. Pioneer Bank & Tr. Co.*, 270 F.2d 823 (5th Cir. 1959) (quoting Collier's Bankruptcy Manual (Oglebay, Kelliher and Newkirk) (1948), p. 845))

  The Complaint in this case certainly alleges an absence of reasonably equivalent value, noting (i) more than $1.6 million to have been paid for the real estate; (ii) the Note to have had a

13

face value of only $1.2 million. *See* Complaint, DE #1, at ¶¶ 13-15. That the Defendants managed to achieve a swap of these two unequally valued items through a state court's exercise of equitable powers is irrelevant to the underlying question of whether or not the land and the remaining debt obligation had "reasonably equivalent value."

Notably, an equitable award of recission *is* not a finding of reasonably equivalent value. Such an award, rather, is merely an effort to afford relief to a party whose contractual rights have been violated. *Wash. Homes*, 382 A.2d at 563. If the sales contract for the real estate had been unequal in the first instance, allowing Swain Landing a steep discount against market value or permitting the Defendants a hefty premium over market value, an award of equitable recission would not cure this disparity. Recission does not require a finding of equal value or level footing; recission is simply a remedy premised upon a contractual breach having occurred. And such is all-the-truer where, as here, a recission judgment somehow omits the normative counter-obligation of requiring monies be returned to the purchaser.[5]

If the Swains wish to allege the real estate was actually worth the precise sum of money still due and owing on the Note, it is certainly their prerogative to do so. For purposes of a Rule 12(b)(6) motion, however, the question is not what they contend the land to be worth, or even the mechanism of how they re-obtained the land, but, rather, whether the Complaint alleges an absence of reasonably equivalent value. The pleading in this case certainly does so and, as such, the Motion merits denial.

---

[5] To be clear, this anomaly is shared not to invite appellate revision of the judgment but, rather, merely to illustrate the fallacy of assuming a judgment of recission to be a *per se* exercise in meting out reasonably equivalent value to both parties.

## V.    Conclusion

WHEREFORE, Swain Landing respectfully prays this Honorable Court (i) deny the Motion; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: August 5, 2025      By:    /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The Belmont Firm
1050 Connecticut Avenue, NW
Suite 500
Washington, DC 20036
Phone: (202) 991-1101
mac@dcbankruptcy.com
*Counsel for the Debtor*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of August, 2025, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

/s/ Maurice B. VerStandig
Maurice B. VerStandig

15