EXHIBIT A

## PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALE AGREEMENT ("Agreement") is made between CATHERINE SWAIN and PERCY SWAIN (the "Seller") and POJO LAPLATA LLC, a Maryland limited liability company (the "Buyer"). The effective date of this Agreement (the "Effective Date") shall be the date on which the last of the Seller or Buyer sign this Agreement below.

WHEREAS, Seller is the owner of real property currently located in La Plata Maryland, consisting of approximately 23.6 acres, said real property also being referred to as 10524 La Plata Road, La Plata, MD 20646., Parcel No: 08-029334, with all of the improvements and appurtenances thereunto belonging, if any (collectively the "Property").

AND, WHEREAS, Seller has agreed to sell the Property to Buyer, and Buyer has agreed to purchase the Property from Seller, under all of the terms set forth herein.

NOW, THEREFORE, for good and valuable consideration, Seller hereby agrees to sell to Buyer, and Buyer hereby agrees to purchase from Seller, the Property subject to and under all of the terms and conditions set forth hereinbelow:

1.    Property, Price, Escrow Agent, and Deposit.

1.01    Property. For purposes of this Agreement, the term "Property" shall mean and include (i) all buildings, structures, and improvements situated on the land which is described in Exhibit A hereto, (ii) all rights, privileges, easements, and appurtenances appertaining thereto and all right, title and interest of Seller in and to any streets, alleys, passages or other rights-of-way or appurtenances included in, adjacent to or used in connection with such land, (iii) all fixtures, equipment and systems incorporated into or necessary for the operation of the Property, and (iv) Seller's rights, title or interest in any names or designations used solely in connection with the Property. Except as otherwise provided in this Agreement, the Property is sold "as is, where is, and with all faults", with no warranties, express or implied, as to condition or fitness for any use. Excluded from the definition of "Property" shall be any other tangible or intangible personal or real property, owned by Seller, and which is not affixed to the Property or not necessary to the operation of the Property, except as otherwise defined herein and, specifically, §1.02 directly below.

1.02.    Personal Property. No personal property with convey with the Property.

1.03    Purchase Price. The aggregate purchase price for the Property (the "Purchase Price") shall be One Million Five Hundred Thousand Dollars ($1,500,000.00).

1.04    Escrow Agent. United Title & Escrow, Inc. ("Escrow Agent") joins in this Agreement and agrees to participate in the underlying transaction and to perform per the purposes, responsibilities, and terms set forth herein.

1

EXHIBIT A

1.05   Payment. The Purchase Price shall be paid as follows:

(a)   Within three (3) business days after the Effective Date of this Agreement, Buyer shall pay an amount of Fifty Thousand Dollars ($50,000.00) (the "Deposit") to the Escrow Agent. If Buyer fails to timely pay any portion of the Deposit as so required, upon written notice from Seller given before Escrow Agent's receipt of the entire Deposit, Seller may elect, but shall have no obligation, to terminate this Agreement. Any portion of the Deposit paid to the Escrow Agent shall be held by the Escrow Agent in accounts approved by Seller and Buyer and applied per the terms of this Agreement. After clearance of funds, the Escrow Agent shall hold the Deposit in an account acceptable to Buyer and Seller at a federally insured financial institution reasonably acceptable to Escrow Agent.

(b)   Seller shall provide One Million Two Hundred Thousand Dollars ($1,200,000.00), in the form of seller financing, bearing simple interest at a rate of four percent (4.0%) per annum, with an October 31, 2023 call. The Promissory Note evidencing the seller financing shall be secured by a first position Deed of Trust (or Mortgage) and a UCC Financing Statement. The Note and security instruments shall be in form and content reasonably acceptable to Seller's legal counsel.

The Note shall be payable as follows: $525,000 payable by December 15, 2022, $525,000 payable by October 31, 2023, and $150,000 payable no later than five (5) business days after the Record Plat is approved. Buyer shall provide Seller with proof of funds for payment due by December 15, 2022 no later than November 1, 2022. Buyer shall provide Seller with proof of funds for payment due by October 31, 2023 no later than October 1, 2023.

(c)   At the Closing under this Agreement, the Deposit and the remainder of the Purchase Price, subject to closing adjustments provided herein, shall be paid by wire transfer of funds to Seller's account.

(d)   The Deposit shall be credited to the Purchase Price and shall be deducted from the amount due to Seller at Closing. As such, the Buyer shall provide an additional Two-Hundred and Fifty Thousand Dollars ($250,000.00) at Closing pursuant to per the terms set forth herein. The Deposit shall be non-refundable.

(e)   Seller shall have the option to purchase one home from the homebuilder who develops the Property. In that event, Buyer shall offer one lot to the homebuilder at no cost and the homebuilder shall reduce the Seller's purchase price by the amount in which homebuilder would have paid for the lot.

2.   Review of Property.

2.01   Due Diligence Materials.

EXHIBIT A

2.02    <u>Study Period</u>.

(a)    Buyer shall have a period, commencing upon the Effective Date and extending through and expiring at 5:00 p.m. Eastern Time on the date which is Forty-Five (45) days after the Effective Date (the "Study Period") or at the date and time of closing, whichever is first, in which to review the Due Diligence Materials and the other Property Information and to determine in its discretion if the Property supports the Purchase Price. If Buyer concludes, in its sole and absolute discretion, that the Property is unacceptable to Buyer for any reason whatsoever, then Buyer shall have the right to terminate this Agreement upon written notice to Seller delivered before the expiration of the Study Period, in which event the Deposit shall be returned to Buyer and the parties shall have no further liability hereunder (except as may be expressly provided herein upon termination). In the event Buyer does not so notify Seller of its election to terminate this Agreement before the expiration of the Study Period, Buyer shall be deemed to have reviewed, approved, and accepted the Property Information and automatically waived its right to terminate this Agreement, and the parties shall proceed to closing per the terms set forth herein. If Buyer terminates this Agreement under this §2.02(a), the amount of $100.00 shall be withheld from the Deposit and delivered to Seller. The parties have bargained for and agreed that the amount described in the preceding sentence, along with the expenditures of time and resources and possible loss of opportunity by Buyer, constitute adequate consideration for Seller's remaining bound by this Agreement notwithstanding such termination rights of Buyer.

(b)    If during the Study Period, any representations and warranties made by Seller and contained in §3.01 are, or have become, not correct in any material respect (for reasons other than default of Seller or fault of Seller if not beyond the Seller's control), Seller shall not be in breach of this Agreement with respect thereto, and Buyer's sole and exclusive remedy (Buyer hereby waiving all other remedies it may have, whether at law, in equity, or otherwise) with respect thereto shall be (i) to waive same and consummate the transaction contemplated in this Agreement, or (ii) to terminate this Agreement by furnishing written notice thereof to the Seller on or prior to the last day of the Study Period, in which event this Agreement shall terminate, neither party shall have any further rights or obligations under this Agreement (except for those provisions which expressly survive termination of the Agreement), and the Deposit shall be returned to the Buyer in the manner described in and in accordance with §2.02.

2.03    <u>Right of Entry</u>. During the Study Period, Buyer and its agents shall have the right to enter the Property upon 24 hours' notice during normal business hours Monday to Friday to examine the environmental, structural, and other physical conditions of the Property. Such right of entry shall be governed by the following provisions:

(a)    In exercising such right of entry, the Buyer agrees to not interfere with the operation of the Property or the rights of employees or other occupants to the Property. Buyer shall provide Seller with written notice of the intention of Buyer and/or its agents to enter the Property at least twenty-four (24) hours before such intended entry and specify the intended purpose therefor and the inspections and examinations contemplated to be made. Furthermore, Buyer shall not take any core samples, install any monitoring wells, or undertake any other invasive tests or studies without the Seller's prior written consent (which may be withheld by Seller

3

EXHIBIT A

in its sole discretion). In all events, the Buyer shall fully repair and restore the Property if any physical damage is caused by the exercise of such rights.

(b)    Buyer may communicate with state and local officials at zoning, assessment, or other government agencies for its own due diligence regarding Buyer's future use of the Property, as well as to gather available information regarding the existing zoning of the Property. However, Buyer may not disclose any information regarding the current condition of the Property to any such officials, or otherwise undertake any communications that may affect the zoning or other legal condition of the Property, without notifying the Seller in advance and obtaining the Seller's prior written consent.

(c)    Buyer hereby indemnifies and holds harmless Seller from and against all liability, losses, and damages (whether actual, direct, indirect, incidental, or consequential), suits, claims, actions, or other proceedings (including attorneys' fees), and costs and expenses (including the costs of restoration, remediation, and other similar activities) arising in any connection with the entry onto the Property by Buyer or any of its employees, agents, contractors or consultants. The foregoing indemnity shall survive any termination of or closing under this Agreement.

(d)    Buyer agrees that if the transaction contemplated by this Agreement does not occur due to termination before closing or for any other reason whatsoever, Buyer shall deliver to Seller within five (5) days after such termination copies of all engineering, environmental and other studies, reports, and inspections prepared by Buyer or third parties in connection with the Property.

(e)    Buyer shall promptly return to Seller or destroy all copies, including any electronic copies, Buyer has made of any Property Information containing any confidential information before or after the execution of this Agreement, not later than ten (10) business days following the date this Agreement is terminated for any reason, and provide Seller with a notice of the completion of such destruction. However, Buyer will be entitled to retain one copy of the Property Information for compliance purposes or for purposes of defending or maintaining litigation or threatened litigation.

BUYER ACKNOWLEDGES AND AGREES THAT SELLER MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND REGARDING THE PHYSICAL (INCLUDING ENVIRONMENTAL AND STRUCTURAL) CONDITION OF THE PROPERTY, EXCEPT AS MAY BE EXPRESSLY STATED HEREIN (IF AT ALL), AND BUYER SHALL RELY ENTIRELY ON BUYER'S EXAMINATIONS AND INSPECTIONS OF THE PROPERTY IN DETERMINING WHETHER TO PURCHASE THE PROPERTY.

2.04    Legal Review Period.

(a)    After the Effective Date, Buyer shall have the right to obtain a current survey and an updated title insurance commitment ("Title Commitment") concerning the

4

Property. On or before a date which is the earlier of (i) ten (10) business days after the later of Buyer's receipt of a survey or Buyer's receipt of the Title Commitment, or (ii) ten (10) business days before the date on which the Study Period expires, but in all events within forty-five (45) days of the Effective Date of this Agreement, Buyer shall notify Seller in writing of any bona fide defect in title to the Property or of any other matter which is indicated on a survey or Title Commitment to which Buyer reasonably objects. If Buyer does so notify Seller of a defect in title or other matter reasonably objectionable to Buyer within the prescribed time, Seller shall have five (5) business days in which to determine whether or not to cure the defect or other matter so objected to by Buyer and to notify Buyer in writing of Seller's decision in this regard (a non-response by Seller within such period shall be an election not to cure). However, Seller shall not be required or obligated to expend any amount of money or take any other action to cure such defect or other matter. If Seller elects (or is deemed to have elected) not to cure the defect or other matter so objected to by Buyer, Buyer shall have the right, as its sole remedy on account thereof, to either (i) waive such defect or other matter and take title to the Property without any adjustment in the Purchase Price, or (ii) terminate this Agreement and receive a return of the Deposit, provided that if Buyer elects to terminate this Agreement, Buyer notifies Seller of its election to terminate on or before the earlier to occur of the date that is five (5) business days after the Seller's notice or the expiration of the Study Period, the failing of which option (i) set forth above in this sentence will be applicable. If Buyer fails to initially notify Seller in writing of a defect or other objectionable matter within the prescribed time as described above, or Buyer fails to terminate the Agreement within the prescribed time upon Seller's election (or deemed election) not to cure, Buyer shall be deemed to have automatically waived any objection to the state of title to the Property or any matter shown on a survey and to have agreed to proceed to closing per the terms of this Agreement.

(b)    In all events, at closing, the Seller will cause to be paid off (with proceeds up to the Seller's proceeds of sale) and released any mortgage or deed of trust, if any, encumbering title to the Property provided that Buyer has remitted payment and offered proof of funds pursuant to the terms herein.

3.    Representations and Warranties.

3.01    Seller's Representations and Warranties. The Seller hereby covenants, represents, and warrants, to its knowledge, that:

(a)    Seller is qualified to do business under the laws of the jurisdiction where the Property is located. Seller has or will have all necessary power and authority to enter into this Agreement and to consummate all transactions contemplated herein.

(b)    There are not pending any suits or other litigation, or any eminent domain or condemnation actions, concerning the Property. To Seller's knowledge, there are no special assessments currently affecting the Property.

(c)    This Agreement has been, and all the documents to be delivered by Seller to Buyer at closing will be, duly authorized and shall constitute binding obligations, enforceable against Seller per the terms thereof.

(d)     This Agreement, and the transfer of the Property by Seller, shall not violate any contract, agreement or instrument to which Seller is a party or by which the Seller is bound.

(e)     Except as provided in §2.01(a), there are no leases, licenses, or occupancy agreements affecting the Property.

(f)     The Property is not, or at closing hereunder will not be, subject to mechanics' liens or other similar liens for services provided to or on behalf of the Seller.

(g)     The Seller is not a "foreign person" within the meaning of §1445(f)(3) of the Internal Revenue Code of 1986.

(h)     There are no court actions or other pending legal proceedings against Seller before any court or administrative agency.

(i)     Seller has not (i) made a general assignment for the benefit of creditors, (ii) filed any voluntary petition in bankruptcy or suffered the filing of any involuntary petition by Seller's creditors, (iii) suffered the appointment of a receiver to take possession of all, or substantially all, of Seller's assets, (iv) suffered the attachment or other judicial seizure of all, or substantially all, of Seller's assets, (v) admitted in writing its inability to pay its debts as they come due, or (vi) made an offer of settlement, extension or composition to its creditors generally.

(j)     Seller holds fee simple title to the Property.

(k)     Seller has not received written notice of violation of any building, zoning, environmental, health or other ordinances, resolutions, statutes or regulations of any government, governmental agencies, or Insurance Board of Underwriters, concerning the use, occupation, maintenance, condition or operation of the Property or any part thereof, which has not been previously cured.

3.02    Buyer's Representations and Warranties. The Buyer hereby covenants, represents, and warrants that:

(a)     Buyer and its permitted assignee, if any, are duly organized, validly existing, and in good standing under the laws of the jurisdiction of its organization and is or will be qualified to do business under the laws of the jurisdiction where the Property is located at closing. Buyer and/or its permitted assignee has or will have all necessary power and authority to enter into this Agreement and to consummate all of the transactions contemplated herein. No consent, waiver, approval, or authorization is required from any person or entity (that has not been obtained) in connection with the execution and delivery of this Agreement by Buyer or the performance by Buyer of the transactions contemplated hereby, nor will the same violate any orders of law or conflict with, result in a breach of, or constitute a default under the organizational documents of Buyer. Buyer shall provide a valid Certificate of Good Standing for POJA Laplata;

6

EXHIBIT A

LLC, to Seller at Closing. The Certificate of Good Standing must be dated no more than one month prior to the Closing Date. Seller reserves the right to periodically require Buyer to provide proof of good standing until the Note is fully satisfied.

(b)     This Agreement has been, and all the documents to be delivered by Buyer to Seller at closing will be, duly authorized and executed and shall constitute binding obligations, enforceable against Buyer per the terms thereof.

(c)     To Buyer's knowledge, this Agreement, and the acquisition of the Property by Buyer, shall not violate any contract, agreement, or instrument to which Buyer is a party or by which the Buyer is bound.

(d)     Buyer has not (i) made a general assignment for the benefit of creditors, (ii) filed any voluntary petition in bankruptcy or suffered the filing of any involuntary petition by Buyer's creditors, (iii) suffered the appointment of a receiver to take possession of all, or substantially all, of Buyer's assets, (iv) suffered the attachment or other judicial seizure of all, or substantially all, of Buyer's assets, (v) admitted in writing its inability to pay its debts as they come due, or (vi) made an offer of settlement, extension or composition to its creditors generally, and Buyer has not planned or contemplated, and is not planning or contemplating, any of the foregoing.

(e)     Buyer complies with the requirements of Executive Order No. 13224, 66 Fed. Reg. 49079 (Sept. 25, 2001) (the "Order") and other similar requirements contained in the rules and regulations of the Office of Foreign Assets Control, Department of the Treasury ("OFAC") and in any enabling legislation or other Executive Orders or regulations in respect thereof (the Order and such other rules, regulations, legislation or orders are collectively hereinafter the "Orders"). Neither the Buyer nor any of its affiliates (i) are listed on the Specially Designated Nationals and Blocked Persons List maintained by OFAC under the Order and/or on any other list of terrorists or terrorist organizations maintained under any of the rules and regulations of OFAC or under any other applicable Orders (such lists are collectively referred to as the "Lists"), (ii) is a Person (as defined in the Order) who has been determined by competent authority to be subject to the prohibitions contained in the Orders, or (iii) is owned or controlled by (including such person being a director or owning voting shares or interests), or acts for or on behalf of, any person on the Lists or any other person who has been determined by competent authority to be subject to the prohibitions contained in the Orders. Buyer is not acting, directly or indirectly for, or on behalf of, any person, group, entity or nation named by any Executive Order (including the September 24, 2001, Executive Order Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism) or the United States Treasury Department as a terrorist, "Specially Designated National and Blocked Person," or other banned or blocked person, entity, or nation under any law that is enforced or administered by the Office of Foreign Assets Control, and is not engaging in the transactions contemplated herein, directly or indirectly, on behalf of, or instigating or facilitating the transactions contemplated herein, directly or indirectly, on behalf of, any such person, group, entity or nation.

7

(f)     There are no judgments presently outstanding and unsatisfied against the Buyer or its managing members. Neither Buyer nor its managing members are party or subject to any pending litigation or proceeding before any court or any governmental or administrative agency, and no judgment, litigation, or proceeding is threatened in writing against Buyer or its managing members. To Buyer's knowledge, neither Buyer nor its managing members have ever been accused of a crime, committed a felony, nor been involved in any litigation or proceeding before any court, or any governmental or administrative agency.

(g)     Buyer agrees that the Escrow Agent for the transaction contemplated herein shall be the title insurer and underwriter providing title insurance for Buyer.

4.     Pre-closing Obligations.

4.01     Operations. Between the Effective Date and the Closing Date (defined hereinbelow), the Seller shall continue to operate the Property in the normal course of business and consistent with past practices. The Seller shall not be required to make any capital repairs, replacements, or other capital expenditures in any connection with the Property.

4.02     Actions Affecting Property. Between the Effective Date and the Closing Date, Seller shall not execute any new leases without Buyer's prior written approval or denial, which approval or denial shall not be unreasonably withheld, conditioned, or delayed. In addition, during the same period, Seller shall not execute any documents, agreements, or instruments affecting title to the Property, or (to the extent within Seller's control) otherwise allow or permit the imposition of any liens or other encumbrances which affect title to the Property, without the prior written approval of the Buyer. If Buyer fails to respond within three (3) business days after any request for approval of a new lease or any other document, then Buyer's approval shall be granted.

4.03     Service Contracts. To the extent that there are any contracts for maintenance or service relating to the Property, such contracts shall be terminated at Seller's expense or shall expire before closing or following Seller's, as tenant, vacating the Property after the bona-fide leasing period after closing.

4.04     Marketing of Property. After the Effective Date, and until closing or earlier termination of this Agreement, Seller may communicate with other prospective third-party purchasers, but Seller shall not enter into any other contract for the sale of the Property unless such contract is expressly subject to the prior rights of Buyer hereunder.

4.05     Prompt Presentment. Seller shall within three (3) business days following receipt thereof (or the day of receipt if received the day before closing) provide Buyer with copies of any plats, surveys, letters regarding, or notices of, claims or violations received by Seller from governmental authorities or other third parties and relating to or materially affecting the Property.

4.06     Proof of Funds. Within three (3) business days of being requested by Seller, Buyer agrees to provide written evidence from a bona fide financial institution of sufficient cash

available to complete this purchase. Buyer's failure to provide Proof of Funds within the specified time period shall constitute a breach herein and shall grant Seller the right to terminate this Agreement. In the event that Seller exercises such right to terminate this Agreement pursuant to this Section, the Deposit shall be released to Seller and neither party shall have any further obligation to the other party under this Agreement (except as expressly set forth in this Agreement).

    5.    <u>Closing and Settlement</u>.

    5.01    <u>Conditions to Buyer's Closing</u>. The satisfaction of each of the following conditions by the time of closing hereunder shall be a condition to the Buyer's obligation to close hereunder:

    (a)    Seller shall have performed all of its obligations and not be in breach or default hereunder past applicable notice and grace period.

    (b)    The continued accuracy in all material respects of the representations and warranties of the respective Sellers outlined in §3.01 above.

    To the extent that any one or more of the foregoing conditions is not satisfied in full by the time of closing, unless waived in writing by Buyer, Buyer may, as its sole remedy on account thereof, terminate this Agreement and receive a return of its Deposit, in which event the parties shall have no further liability hereunder (except as may be expressly provided herein upon termination).

    5.02    <u>Conditions to Seller's Closing</u>. The satisfaction of each of the following conditions by the time of closing hereunder shall be a condition to the Seller's obligation to close hereunder:

    (a)    Buyer shall have performed all of its obligations and not be in breach or default hereunder past applicable notice and grace period.

    (b)    The continued accuracy in all material respects of the representations and warranties of the Buyer outlined in §3.02 above.

    To the extent that any one or more of the foregoing conditions is not satisfied in full by the time of closing, unless waived in writing by Seller, Seller may terminate this Agreement upon written notice to Buyer of its election to do so, without prejudice to or limitation on Seller's remedies on account of breach or default hereunder by Buyer.

    5.03    <u>Survival of Representations</u>. Absent any such termination, upon closing hereunder the covenants, representations, and warranties of the respective Sellers outlined in §3.01 above, as modified by the certificate delivered from Seller to Buyer at closing (described hereinbelow), shall be remade as of the date of closing hereunder and shall survive the closing for six (6) months. However, notwithstanding anything to the contrary herein, to the extent that any documents or information regarding the Seller or the Property are disclosed to Buyer or brought

# EXHIBIT A

to Buyer's attention before closing, either orally or in writing, including, without limitation, any matters disclosed to Buyer in the Due Diligence Materials, Property Information or an interview with any vendor, supplier, broker or other person, and Buyer nevertheless closes on purchase of the Property (and Buyer has not already waived its objection to or claims based on the Due Diligence Materials under §2.02(b) above), Buyer shall be deemed to have accepted and to have waived any objection to or claim based on such documents or information. Furthermore, except concerning any covenants, representations, or warranties set forth herein which are expressly to survive closing hereunder, all covenants, representations, and warranties contained in this Agreement shall merge in the deed and the other documents delivered at closing and shall not survive closing hereunder.

5.04   Closing Date. Closing and settlement of the purchase and sale transaction contemplated herein shall occur on or before November 15_____, 2021 (the "Closing Date"). Notwithstanding the foregoing, and provided that (i) Buyer has duly and timely performed all of its obligations hereunder and is otherwise diligently pursuing the financing that is necessary toward a proper and timely closing of the transaction, (ii) Buyer provides written notice of at least fifteen (15) business days before the original Closing Date, and (iii) Buyer pays an additional nonrefundable deposit of Fifty Thousand Dollars ($50,000.00) to be remitted directly to the Escrow Agent, then the Buyer shall have a one-time right to extend the Closing Date for thirty (30) days. Such additional deposit shall be credited to the Purchase Price upon closing hereunder; in all other events, such fee shall be forfeited and will not be credited to the Deposit at Closing. The fee shall immediately become the property of the Seller. Closing shall occur through escrow and under escrow instructions consistent with the terms of this Agreement and otherwise mutually and reasonably satisfactory to Buyer and Seller.

5.05   Deed and Title. At closing, Seller shall deliver to Buyer a special warranty deed in a form satisfactory to Seller upon payment of the Purchase Price (subject to closing adjustments provided herein) to Seller. Title to the Property as conveyed by such deed shall be subject to (a) liens securing payment of taxes, assessments, and other public charges imposed in connection with the Property but which are not yet due as of the Closing Date, (b) all matters indicated on the Title Commitment which are not objected to or waived by Buyer per §2.04 above, (c) any matters which could be disclosed by an accurate survey or visual inspection of the Property, and (d) any zoning, subdivision or other public laws and regulations (collectively the "Permitted Encumbrances").

5.06   Additional Conveyances. Seller shall prepare, and (where indicated or appropriate) execute and deliver at closing, the following documents, each of which shall be reasonably satisfactory to Buyer:

(a)   An assignment by Seller, with an assumption by Buyer, of all warranties, if any, and other rights relating to the Property which are assignable without charge or restriction.

(b)   Evidence, in a form satisfactory to the Buyer's title insurer, of Seller's power and authority to enter into this transaction.

Case 25-10013-ELG   Doc 18-1   Filed 01/21/26   Entered 01/21/26 23:10:44   Desc
Exhibit A Purchase and Sale Agreement   Page 11 of 44

EXHIBIT A

(c) Evidence in a form satisfactory to the Escrow Agent that Seller is not a "foreign person" within the meaning of §1445(f)(3) of the Internal Revenue Code of 1986.

(d) A written certificate stating that all representations and warranties contained in §3.01 above remain, as of the Closing Date, correct in all material respects as when first made hereunder or, if not correct, stating the extent to which any such representations and warranties are not correct.

(e) A settlement statement for the closing containing all prorations and adjustments provided in §5.08 hereof.

(f) Any certificates, affidavits, and other documents or instruments which are required or standard under local laws and customs for commercial real estate transactions like the purchase and sale contemplated herein.

5.07 <u>Possession</u>. Possession of the Property shall be delivered to the Buyer on the Closing Date (subject to §4.06 of this Agreement governing the Seller's lease-back of the Property following closing). In addition, on or before the Closing Date, the Seller shall deliver to the Buyer originals of all Due Diligence Materials.

5.08 <u>Prorations</u>. The following provisions shall apply to the division of funds, obligations, and payments between the parties as of closing hereunder:

(a) The parties shall adjust and prorate the following items as of 11:59 p.m. on the Closing Date:

(i) All real property taxes, assessments, and other governmental impositions of any kind or nature, including any special assessments or similar charges, accrued or imposed in any connection with the Property (collectively "Taxes"), which relate to the tax year or other applicable period within which the closing occurs, whether such Taxes are payable in advance or in arrears.

(ii) All fees, costs, and expenses incurred in connection with the Property, including fees, costs, and expenses under maintenance, trash removal, janitorial or other service contracts, and water, sewer, and utility charges, which relate to the period within which the closing occurs.

For clarity, all of the foregoing prorations and adjustments shall be made between the parties with the result and effect that (1) the Seller shall receive the benefit of all income and shall be obligated and responsible for all costs and expenses, associated with the Property through the Closing Date, and (2) the Buyer shall receive the benefit of all income and shall be obligated and responsible for all costs and expenses associated with the Property after Closing Date.

(b)    The parties agree that in the event the Seller's proceeds of the Purchase Price are not delivered to Seller's account under §1.05(b) by 1:00 P.M. Eastern Standard Time on the Closing Date, then the prorations described in subsection (a) above shall be recalculated as of 11:59 P.M. Eastern Standard Time the next business day (or, if later, the first day on which Seller has such funds by 1:00 P.M. Eastern Standard Time). Such recalculation shall not diminish or otherwise affect the parties' obligation to close at the time and the place required by the terms of this Agreement.

(c)    The obligations under this section shall survive closing. If any prorations or adjustments made at closing are based on estimates before actual figures being available or are subject to errors or omissions discovered after closing, the parties shall promptly re-adjust the subject amounts, with such payments to be made between the parties as are necessary to correct the errors. In all events, the parties shall make such adjustments, or confirm in writing that no such adjustments are necessary, within one hundred twenty (120) days after the end of the calendar year in which the closing occurs. Notwithstanding the foregoing, any party hereto not bringing to the attention of the other party, in writing within one hundred twenty (120) days following the calendar year in which the closing occurs, a potential claim for a re-adjustment in prorations based on error, miscalculation or omission shall be deemed to have automatically waived and relinquished such claim.

5.09    Closing Costs.

(a)    Buyer shall pay (i) all fees, costs, and expenses charged by any mortgage lender financing Buyer's purchase of the Property, (ii) all transfer, recordation, documentary stamp, and other similar taxes and charges imposed in connection with the delivery and recordation of a deed for the Property and otherwise in connection with this transaction, (iii) all costs of the examination of title and all owner's title insurance policy premiums (including the costs of endorsements), (iv) all escrow charges imposed by the Escrow Agent in the transaction, (v) all costs of obtaining a current survey of the Property, (vi) all costs of Buyer's due diligence concerning the Property, (vii) all sales, bulk sales, withholding or other taxes or similar charges, if any, charged in connection with the transaction, (viii) all costs and expenses of any kind related to the Financing, and (ix) all fees of attorneys and any other professionals engaged by Buyer in connection with the transaction.

(b)    Seller shall pay (i) all fees of attorneys and any other professionals engaged by Seller in connection with the transaction.

6.    Casualty and Condemnation.

6.01    Substantial Event. If between the Effective Date and the Closing Date, any improvements on the Property are destroyed or damaged to such an extent that the costs to repair are more than twenty-five percent (25%) of the Purchase Price (as determined by estimates of Seller's insurer), or condemnation proceedings are commenced against the Property or any part thereof which involve the elimination of rentable space or points of access to the Property without

EXHIBIT A

substitute space or alternative access being available, Buyer may terminate this Agreement and receive a return of its Deposit. However, in the event of such casualty or condemnation, Buyer shall have the right to elect not to terminate this Agreement, in which case any proceeds of insurance or condemnation awards payable because of such damage or condemnation shall be paid or assigned to Buyer.

6.02    Insubstantial Event. If between the Effective Date and the Closing Date, the improvements on the Property are damaged to such an extent that the costs to repair are equal to or less than twenty-five percent (25%) of the Purchase Price (as determined by estimates of Seller's insurer), or if any improvements on the Property are destroyed or damaged to such an extent that the costs to repair are more than twenty-five percent (25%) of the Purchase Price, but Buyer elects not to terminate the Agreement, or condemnation proceedings are commenced against the Property or any part thereof which do not involve the elimination of rentable space or points of access to the Property, or concerning which substitute space or alternative access is available, then any proceeds of insurance or condemnation awards payable because of such damage or condemnation shall be paid or assigned to Buyer, and Buyer shall proceed to closing.

6.03    Termination. Notwithstanding the foregoing, in the case of any casualty or condemnation described above giving rise to a right of termination in the Buyer, such right of termination must be exercised, if at all, within fifteen (15) days after Buyer is first notified of such casualty or condemnation, in which case the Deposit shall be returned to Buyer, with the parties to have no further liability hereunder (except as may be expressly provided herein upon termination).

7.    Default/Remedies.

7.01    Notice and Opportunity to Cure. Notwithstanding anything to the contrary herein, if either Seller or Buyer is in breach or default of this Agreement during the period up to (and including) closing hereunder, the other party shall, before exercising any remedies provided herein on account of such breach or default, deliver written notice to the breaching or defaulting party, and such breaching or defaulting party shall have a period of ten (10) days in which to cure such breach or default (provided that the closing hereunder shall not be subject to any extension to accommodate such 10-day grace period).

7.02    Default by Seller. If Seller breaches or defaults in any material manner under any covenant or obligation under this Agreement before closing (which is not waived or deemed waived by the terms hereof), and such breach or default is not cured within any applicable notice and grace period, then Buyer shall have, as its sole option and remedy on account thereof, the right to either (a) enforce this Agreement by specific performance, or (b) terminate this Agreement, receive a return of the Deposit, and Seller shall remit to Buyer, no later than fifteen (15) days after Buyer's notice of termination, the total of Buyer's out-of-pocket expenses in connection with the transaction not to exceed Twenty-Five Thousand Dollars ($25,000.00), whereupon Buyer and Seller shall have no further rights or obligations under this Agreement except for those provisions which expressly survive termination. Buyer hereby waives all other

13

Case 25-10013-ELG   Doc 18-1   Filed 01/21/26   Entered 01/21/26 23:10:44   Desc
Exhibit A Purchase and Sale Agreement   Page 14 of 44

EXHIBIT A

remedies, including any claim against Seller for any other damages of any type or kind including punitive, consequential, indirect, or speculative damages.

      7.03   Default by Buyer. If Buyer breaches or defaults in any material manner under any covenant or obligation under this Agreement before closing (which is not waived or deemed waived by the terms hereof), then Seller shall have, as its sole option and remedy on account thereof, the right to retain Twenty-Five Thousand Dollars ($25,000.00) of the Deposit, hereunder as liquidated damages (in which case the Escrow Agent shall pay to Seller half of the Deposit then held by Escrow Agent). Notwithstanding the foregoing, this provision shall not limit the Seller's right and claim against Buyer for any portion of the total Deposit that is not paid to Seller, and further, provided that this provision shall not limit the Seller's right to pursue and recover on a claim concerning any indemnity obligations of Buyer that expressly survive termination of this Agreement. The parties agree that actual damages would be difficult to ascertain and that such damages set forth hereinabove are the parties' best and good faith estimate of such damages and not a penalty. Buyer and Seller shall have no further rights or obligations under this Agreement except for those provisions which expressly survive termination. Seller hereby waives all other remedies, including any claim against Buyer for any other damages of any type or kind including punitive, consequential, indirect, or speculative damages.

    8.   Provisions Regarding Escrow Agent.

      8.01   Administration of Deposit. The Escrow Agent agrees to invest, hold and either forfeit to Seller or apply at closing the Deposit per the terms and conditions of this Agreement.

      8.02   Limitation on Liability. The following provisions shall control concerning the rights, duties, and liabilities of the Escrow Agent:

        (a)   The Escrow Agent acts hereunder as a depository only and is not responsible or liable whatsoever for the (i) sufficiency, correctness, genuineness or validity of any written instrument, notice, or evidence of a party's receipt of any instruction or notice which is received by the Escrow Agent, or (ii) identity or authority of any person executing such instruction, notice or evidence.

        (b)   The Escrow Agent shall have no responsibility hereunder except for the performance by it in good faith of the acts to be performed by it hereunder, and the Escrow Agent shall have no liability except for Escrow Agent's breach of this Agreement, willful misconduct, or gross negligence.

        (c)   The Escrow Agent shall not be responsible for the solvency or financial stability of any financial institution with which the Escrow Agent is directed to invest funds escrowed hereunder.

        (d)   The Escrow Agent shall be reimbursed on an equal basis by Buyer and Seller for any reasonable expenses incurred by the Escrow Agent arising from a dispute

concerning the amount held in escrow, including the cost of any legal expenses and court costs incurred by the Escrow Agent, should the Escrow Agent deem it necessary to retain an attorney concerning the disposition of the amount held in escrow.

(e)       In the event of a dispute between the parties hereto concerning the disposition of the amount held in escrow, the Escrow Agent shall be entitled, at its discretion, to deliver such amount to an appropriate court of law pending resolution of the dispute.

9.       Confidentiality. Buyer expressly agrees to protect and hold in the strictest confidence (a) the transactions contemplated by this Agreement, (b) the documents and information provided by Seller to Buyer under §2.01 hereof or otherwise (except for that which is readily available to the public), (c) the results of any inspections, studies or reports generated by or on behalf of the Buyer, and (d) all negotiations between the parties. Notwithstanding the foregoing, Buyer shall be permitted to disclose such matters, as appropriate, to its officers, directors, employees, and partners and its attorney(s), surveyor, title insurer, broker and accountants, provided that Buyer requires such parties, in writing, to observe the foregoing covenant regarding confidentiality. Buyer further agrees that if the transaction contemplated by this Agreement does not occur for any reason whatsoever, Buyer shall promptly return to Seller all copies of documents and other written materials related to the transaction furnished to the Buyer and such other parties under §2.01 or otherwise, or at the request of Seller, destroy the same under the terms of §2.03(f). Seller and Buyer agree that, upon closing of the transaction contemplated hereby, neither party (nor any of such parties' agents or brokers) shall issue any press releases or other similar public broadcast of the transaction without the prior consent of the other party, and, in all cases, any press release so permitted shall not contain the Purchase Price or other economic information about the transaction. The provisions of this section shall survive any termination of this Agreement.

10.       Miscellaneous.

10.01       Assignment. Buyer shall not assign or transfer this Agreement or any interest herein or in the Property to any third party without the prior written consent of Seller. Upon any assignment, the original named Buyer herein shall not be released but shall remain primarily responsible for all duties, obligations, and liabilities of the Buyer hereunder. This Agreement shall inure to the benefit of, and be binding upon, the successors and assigns of the parties hereto.

10.02       No Personal Liability. No employee, officer, director, trustee, partner, member, shareholder, affiliate or other owner of Seller, or any investment manager or other agent of Seller, or such respective parties' constituent employees, officers, directors, trustees, partners, members, shareholders, affiliates or other owners, shall be personally liable or responsible for any duties, obligations or liabilities of the Seller hereunder or in any other connection with the Property or this transaction.

10.03       Limitation of Liability. To the extent that Seller has any obligations or liabilities of any kind after closing under this Agreement, such liability shall in all events be limited

to, and no action may be taken for amounts greater than, an aggregate amount of Fifty Thousand Dollars ($50,000.00), exclusive of reasonable attorney's fees and court costs. However, this provision shall not be construed or interpreted as creating any such obligations or liabilities of Seller, which shall be determined by other provisions of this Agreement. In addition, and notwithstanding the foregoing, Buyer agrees that it shall have no rights, and shall take no action in suit or otherwise, concerning any breach of any representation or warranty or other default of a post-closing obligation, which is outlined in §3.01 hereof and to survive the Closing Date under §5.03 hereof, to the extent that the actual damages suffered by Seller on account thereof do not exceed an amount of Twenty Thousand Dollars ($20,000.00).

10.04   Time is of the Essence. Time is of the essence concerning the performance of all of the terms, conditions, and covenants of this Agreement.

10.05   Notices. All notices given in connection with this Agreement shall be effective as of the date personally delivered, one (1) day after the date delivered to overnight courier, upon receipt if delivered by electronic mail as attached in portable document format ("PDF"), or three (3) days after being mailed by U.S. Mail (postage prepaid), as the case may be, if sent to the parties at the following addresses:

Seller's notice address:

Catherine and Percy Swain
11505 Myer Road
Bowie, Maryland 20721

And a copy to:

Evans Law
113 Cathedral Street
Annapolis, Maryland 21401
Attn: Gary Damico, Esq.
Phone: 410-626-6009
Email: gdamico@msevanslaw.com

Buyer's notice address:

POJO Laplata LLC
Attn: Michael Postal
1801 16th Street, NW #606
Washington, DC 20009
Phone: 301-502-5060
Email: mikepostal@Tenacitygroup.com

10.06   Entire Agreement. This Agreement contains all agreements of the parties concerning the Property and supersedes any prior discussions, contracts, or other agreements with

Case 25-10013-ELG   Doc 18-1   Filed 01/21/26   Entered 01/21/26 23:10:44   Desc
Exhibit A Purchase and Sale Agreement   Page 17 of 44

EXHIBIT A

respect thereto. No modifications to this Agreement or waivers of any rights or benefits provided herein shall be binding unless signed by the party against whom such modification or waiver is sought to be enforced. Notwithstanding the foregoing, if the Seller and Buyer agree to and execute any written amendment or other document modifying this Agreement, which does not directly modify the obligations of the Escrow Agent hereunder, the Escrow Agent shall not be required to execute such amendment or other agreement for the document to be fully effective and enforceable.

10.07  <u>Broker</u>. Each of Seller and Buyer warrants to the other that it has not dealt with any broker or finder in connection with the transaction contemplated by this Agreement. Seller and Buyer indemnifies and holds the other harmless from and against any losses, damages, costs, or expenses (including attorneys' fees) incurred by such other party due to a breach of the foregoing warranty and representation. The foregoing indemnity shall survive closing. Seller warrants that it has not dealt with any law firm in connection with the transaction contemplated by this Agreement, except for Evans Law (the "Law Firm"), to whom Seller has compensated according to a separate agreement. Seller and Buyer indemnify and hold Evans Law harmless from and against any losses, damages, costs, or expenses (including attorneys' fees) incurred by such other party due to a breach of the foregoing warranty and representation. The foregoing indemnity shall survive closing.

10.08  <u>Attorney's Fees</u>. If either party hereto fails to perform any of its obligations under this Agreement or if any dispute arises between the parties hereto concerning the meaning or interpretation of any provision of this Agreement, whether before or after closing, then the defaulting party or the party not prevailing in such dispute, as the case may be, shall pay reasonable costs and expenses incurred by the other party on account of such default and/or in enforcing or establishing its rights hereunder, including, without limitation, court costs and reasonable attorneys' fees and disbursements. Additionally, in the event the Buyer and Seller must pay attorney's fees, court costs and/or any other damages suffered by Escrow Agent under section 8.02 (d) above, then the party that does not prevail in such dispute shall reimburse the prevailing party in such dispute all such attorney's fees, court costs and/or any other damages paid by the prevailing party.

10.09  <u>Perpetuities</u>. If the rule against perpetuities would invalidate this Agreement or any portion thereof, due to the potential failure of an interest in property created herein to vest within a particular time, then notwithstanding anything to the contrary herein, each such interest in property must vest, if at all, before the passing of twenty-one (21) years from the date of this Agreement, or this Agreement shall become null and void upon the expiration of such 21-year period and the parties shall have no further liability hereunder.

10.10  <u>Severability</u>. No determination by any court, governmental body, or otherwise that any provision of this Agreement or any amendment hereof is invalid or unenforceable in any instance shall affect the validity or enforceability of any other such provision or such provision in any circumstance not controlled by such determination. Each such provision shall be valid and enforceable to the fullest extent allowed by and shall be construed wherever possible as being consistent with applicable law.

17

10.11   Recording. This Agreement may not be recorded among the land records or among any other public records without the Buyer's prior written consent (which consent may be withheld for any reason).

10.12   Counterparts. This Agreement may be signed in counterparts and shall be fully enforceable when signed in such manner. The parties hereby acknowledge and agree that facsimile signatures or signatures transmitted by electronic mail in so-called "PDF" format shall be legal and binding and shall have the same full force and effect as if an original of this Agreement had been delivered. Seller and Buyer (i) intend to be bound by the signatures on any document sent by facsimile or electronic mail, (ii) are aware that the other party will rely on such signatures, and (iii) hereby waive any defenses to the enforcement of the terms of this Agreement based on the foregoing forms of signature.

10.13   Exchange. Seller may incorporate the sale and purchase of the Property as part of a like-kind exchange under §1031 of the Internal Revenue Code, and the Buyer agrees to cooperate in such exchange and to execute any documents necessary therefor, provided that (i) there is no delay in the Closing Date, (ii) Buyer does not have to take title to any other property, and (iii) Buyer shall incur no additional liability or costs for participating in such exchange. Buyer will assist Seller to structure any alternative transaction scenarios which might best minimize Seller's tax burden, subject to Seller's tax advisors, legal representatives, and internal governance requirements.

10.14   1099-S; Real Estate Reporting Person. To comply with information reporting requirements provided by Section 6045(e) of the Internal Revenue Code of 1986, as amended, and the Treasury Regulations thereunder, the parties hereby designate Escrow Agent as the party who shall be responsible for reporting to the Internal Revenue Service (the "IRS") the sale of the Property on IRS Form 1099-S. The parties shall provide the Escrow Agent with the information necessary to complete Form 1099-S. Escrow Agent shall provide all the parties with a copy of the IRS Form 1099-S filed with the IRS and with any documentation used to complete IRS Form 1099-S. The parties agree to retain this Agreement for 4 years following December 31 of the calendar year in which the closing hereunder occurs.

10.15   Timing. The phrase "business days" as used herein shall mean the days of Monday through Friday, excepting only federal holidays. The phrase "calendar days" as used herein shall mean all days of the week, including all holidays. The term "days" without reference to calendar or business days shall mean calendar days. If any date upon which an obligation is to be performed hereunder, or a period described herein expires, falls on a Saturday, Sunday, or other legal holiday recognized by national banks in Maryland, then the date for such performance or the expiration of such period, as applicable, shall be extended to the next following day which is not a Saturday, Sunday or such legal holiday.

10.16   Exhibits. All Exhibits attached hereto are incorporated herein and made a part hereof by reference.

10.17   <u>Forum</u>. This Agreement and the rights of the parties hereunder shall be governed by and construed per the laws of the State of Maryland.

10.18   <u>Option to Purchase Future Residence</u>. The Seller shall have the option to purchase one home from the homebuilder. In that event, Buyer shall offer one lot to the homebuilder at no cost and the homebuilder shall reduce the purchase price by the amount in which homebuilder would have paid for the lot.

10.19   <u>Force Majeure</u>. Performance by either party under this agreement is excused during the period such performance is prevented or delayed by government restrictions, war or warlike activity, insurrection or civil disorder, or any other causes similar or dissimilar to the foregoing that are beyond the control of either party and are not foreseeable at the time the agreement is executed. In no event shall financial hardship, even if caused by any of the aforementioned excusable events, excuse Buyer from its obligation to render payment pursuant to this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the dates set forth below.

[Signatures on next page]

19

SELLER:

_____          By: _____ (SEAL)
Date                             Catherine Swain


_____          By: _____ (SEAL)
Date                             Percy Swain



BUYER:

                                 POJO Laplata LLC
10 / 04 / 2021                   By: *Mike Postal* _____ (SEAL)
Date                             Name (print): Mike Postal _____
                                 Title: (print): Managing Member _____

20

Doc ID: 22d72a63bd802f3a753437d66a201eeaeaf8bb4

Case 25-10013-ELG    Doc 18-1    Filed 01/21/26    Entered 01/21/26 23:10:44    Desc
Exhibit A Purchase and Sale Agreement    Page 21 of 44

EXHIBIT A

Sep 29 2021 7:49pm

SELLER:

Sept 29, 2021
Date

By: _Catherine Swain_ (SEAL)
Catherine Swain

Sept 29, 2021
Date

By: _Percy Swain_ (SEAL)
Percy Swain

BUYER:

_____
Date

POJO Laplata LLC
By: _____ (SEAL)
Name (print): _____
Title: (print): _____

EXHIBIT A

# HELLOSIGN

Audit Trail

| | |
|---|---|
| **TITLE** | 21.09.21 Purchase and Sale Agreement PRODUCTION.pdf |
| **FILE NAME** | 21.09.21%20Purcha...%20PRODUCTION.pdf |
| **DOCUMENT ID** | 22d72a63bd802f3a753437d66a201eeaeaf8bb49 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | Completed |

This document was requested from app.clio.com

## Document History

| | | |
|---|---|---|
| SENT | **09 / 29 / 2021**<br>16:26:21 UTC | Sent for signature to Mike Postal (mikepostal@tenacitygroup.com) from csorrento@msevanslaw.com IP: 73.128.48.173 |
| VIEWED | **09 / 30 / 2021**<br>12:36:23 UTC | Viewed by Mike Postal (mikepostal@tenacitygroup.com) IP: 108.51.225.44 |
| SIGNED | **10 / 04 / 2021**<br>15:51:34 UTC | Signed by Mike Postal (mikepostal@tenacitygroup.com) IP: 108.51.225.44 |
| COMPLETED | **10 / 04 / 2021**<br>15:51:34 UTC | The document has been completed. |

Powered by HELLOSIGN

Property of
Catherine L. & Percy R. Swain
Legal Description
8th Election District
Charles County, Maryland

**Beginning** for the same at a point lying on the northern right of way line of LaPlata Road (Maryland 488), a forty (40) foot right of way, said point also marking the southeastern corner of a piece or parcel of land standing in the name of Annie T. Swann and Faye Y. Brooks as recorded among the Land Records of Charles County, Maryland in Liber 10490 at Folio 383; thence departing said point so fixed and binding on the eastern outline of said Swann and Brooks property and with the lands of Louis C. & Margaret H. Swann as recorded among said land records in Liber 178 at Folio 121

1. North 13°57'36" East, 561.26 feet to a point marking the southeastern corner of a piece or parcel of land standing in the name of Ollie Coombs as recorded among said land records in Liber 31 at Folio 312; thence departing said Swann property and running with and binding on said Coombs property and with the lands of Sharon Makle as recorded among said land records in Liber 12006 at Folio 186 the following two (2) courses and distances.

2. North 18°26'10" East, 341.80 feet; thence

3. North 68°34'50" West, 304.26 feet to a point lying on the eastern right of way line of Radio Station Road, an eighty (80) foot right of way; thence departing said Makle property and running with and binding on said eastern right of way line of Radio Station Road

4. North 16°11'08" East, 231.25 feet to a point marking the southwestern corner of a piece or parcel of land standing in the name of The Bryans Road Corporation as recorded among said land records in Liber 1278 at Folio 315; thence departing said Radio Station Road and running with and binding on said Bryans Road Corporation property the following three (3) courses and distances

5. South 73°43'21" East, 194.81 feet; thence

6. North 16°16'39" East, 210.00 feet; thence

7. North 73°43'21" West, 197.16 feet to a point lying on the eastern right of way line of said Radio Station Road; thence departing said Bryans Road Corporation property and running with said Radio Station Road

8. North 15°10'21" East, 20.00 feet to a point marking the southwestern corner Lot 2 as shown on a plat entitled "Swann Property Subdivision" as recorded among the Plat Records of Charles County, Maryland in Plat Book 39 at Page 268; thence departing said Radio Station Road and running with and binding on said Lot 2

# EXHIBIT A

EXHIBIT A

9.  South 81°00'37" East, 810.90 feet to a point intersecting the eastern outline of a piece or parcel of land standing in the name of Arturo M. Monteiro as recorded among said land records in Liber 10351 at Folio 315; thence departing the said Lot 2 and running with and binding on said Monteiro property, and with the lands of Jefferey G. Wentworth as recorded among said land records in Liber 10527 at Folio 277, and with the lands of Rudolph A. Posey, Jr & Catherine V. Posey as recorded among said land records in Liber 198 at Folio 689, and with the lands of Robert & Dorothy Johnson as recorded among said land records in Liber 1169 at Folio 357

10. South 16°56'35" East, 967.24 feet to a point intersecting the northern outline of said LaPlata Road; thence departing said Johnson property and running with and binding on said Laplata Road

11. South 72°21'57" West, 1227.01 feet to the point and place of beginning.

The above described parcel contains 24.5441 acres or 1,069,143 square feet of land, more or less.

**BEING** a portion of the lands conveyed by Catherine L. Swain to Catherine L. Swain and Percy R. Swain, tenants by the entirety by Quitclaim Deed April 3, 2019 and recorded among the land records of Charles County, Maryland in Liber 10660 at Folio 92.

Expires 01/02/23

EXHIBIT A

# EXHIBIT A

Radio Station Road    60' R/W

VICINITY MAP    SCALE 1"=2,000'

LOT 1
24.5868 AC.

LOT 2
14.0232 AC.
(Not a buildable lot at this time)

Water and sewer facilities have not been
approved for the lot/s hereon described.

COUNTY COMMISSIONERS OF
CHARLES COUNTY

STATE DEPARTMENT OF
HEALTH AND MENTAL HYGIENE
L.373  F.165

BOX ELDER ROAD    60' R/W

H/F
Raymond N. and
Martha L. Johnson
L.102  F.467

H/F
Jeffrey L. &
Barbara C. Johnson
L.290  F.200

H/F
Rudolph A. Jr. & Catherine
V. Posey
L.198  F.989

H/F
Robert & Dorothy
Johnson
L.1109  F.357

H/F
John Roosevelt Swann
L.1109  F.509

TOWN OF LA PLATA
L.242  F.175

JUN 1 6 1989
Charles County Planning Commission
La Plata, Maryland 20646

Thomas Ray, Swann
L.366  F.518

Philip Lewis
Johnson

Louis C. Maggard
L.178  F.701

Ollie Combs
L.36  F.112

Howard L. Catherine L. Mable
L.102  F.574

Howard L. Catherine
L. Mable
L.102  F.663

Ella Johnson
L.267  F.409

MD ROUTE 488 (40' ROW)

**OWNER'S DEDICATION**

I, James F. Swann, owner
of the property shown hereon,
do hereby adopt this plan of
subdivision.

There are no earth, actions of
law, leases liens, mortgages, trusts,
easements or rights-of-way affect-
ing the property other than those shown
on this plan of subdivision

Witness        James F. Swann

**SURVEYOR'S CERTIFICATE:**

I hereby certify that the plan shown hereon
is a subdivision of the land conveyed by Elsie
Richards to James F Swann and Mary C Swann
his wife, by deed dated May 17, 1983 and recorded
among the Land Records of Charles County, Maryland
in Liber 793 at Folio 227, and that the requirements
of the Charles County Subdivision Regulations and the
Annotated Code of Maryland have been complied with

Date        James C. Lorenzi
Property Line Surveyor
Maryland Registration No 10799

**SWANN PROPERTY
SUBDIVISION**

8TH ELECTION DISTRICT    CHARLES COUNTY MD.

Record Plat    SCALE 1"=100'

| DRAWN May 17, 1989 | CONTRACT 87906l | DRAWING |
| CHECKED | REFERENCE | |
| APPROVED | FIELD BOOK | 1 |

LORENZI, DODDS AND GUNNILL
PITTSBURGH, PA.    ENGINEERS    WASHINGTON, D. C.
ARCHITECTS        OF 1

**APPROVED**
Charles County Planning Commission    11 Aug 1989    Date

**APPROVED**
Roy E. Hamill    JUL 31 1989
Charles County Department of Public Works    Date

89-121

89-154

EXHIBIT A

# EXHIBIT A



N/F
THE BRYANS
ROAD CORPORATION
TM33 P376
L1278 F315

N/F
ARTURO M. MONTERO
TM33 P9
L10351 F315
P939 PG268
LOT 2

N/F
ARTURO M. MONTEIRO
TM33 P9
L10351 F315
PARCEL 2

N/F
JEFFREY G. WENTWORTH
TM33 P64
L10527 F277

N/F
SHARON MAKILE
TM33 P394
L12006 F195

N/F
OLLIE COOMBS
TM33 P375
L31 F312

N/F
RUDOLPH A. POSEY, JR
& CATHERINE V. POSEY
TM33 P67
L198 F689

CATHERINE L. SWAIN &
PERCY R. SWAIN
TM33 P6
L5050 P92
P939 PG268
LOT 1
24.5441 ACS

N/F
LOUIS C. SWAIN &
MARGARET H. SWAIN
TM33 P63
L176 F121

N/F
ROBERT JOHNSON
& DOROTHY JOHNSON
TM33 P424
L1169 F357

N/F
ANNIE T. SWAIN &
FAYE Y. BROOKS
TM33 P72
L10490 F383

N/F
SRVEN
PROPERTIES, LLC
TM33 P378
L10568 F316

MD STATE PLANE
DATUM NAD8391

---

**SOLTESZ, INC.**

Rockville
Lanham
Waldorf
Leonardtown
Frederick
Soltesz DC, LLC

Engineering
Surveying
Planning
Environmental Sciences

WALDORF OFFICE
401 Post Office Road, Suite 103
Waldorf, MD 20602
P. 301.870.2166  F. 301.870.2884  www.solteszco.com

---

BOUNDARY EXHIBIT
PROPERTY OF
## CATHERINE L. SWAIN
## & PERCY R. SWAIN

TAX MAP 33, GRID 18, PARCEL 6
EIGHTH (8th) ELECTION DISTRICT, CHARLES COUNTY, MARYLAND

| SHEET 1 OF 1 | SCALE: 1" = 100' | DECEMBER 2021 |
| JOB NO: 4274-00-00 | DRWN BY: JMD | CHKD BY: LLM |

# EXHIBIT A

EXHIBIT A

## FIRST AMENDMENT TO THE
## PURCHASE AND SALE AGREEMENT

THIS FIRST AMENDMENT TO THE PURCHASE AND SALE AGREEMENT ("Amendment") is made between CATHERINE SWAIN and PERCY SWAIN (the "Seller") and POJO LAPLATA LLC, a Maryland limited liability company (the "Buyer"). The effective date of this Amendment (the "Effective Date") shall be the date on which the last of the Seller or Buyer sign this Agreement below.

WHEREAS, on October 4, 2021, the Parties executed a Purchase and Sale Agreement ("PSA") for the property otherwise known as 10524 La Plata Road, La Plata, MD 20646 (the "Property"); and

WHEREAS, Section 5.04 of the PSA stipulates a closing date of November 15, 2021; and

WHEREAS, Section 5.04 of the PSA further delineates in part:

> *Notwithstanding the foregoing, and provided that (i) Buyer has duly and timely performed all of its obligations hereunder and is otherwise diligently pursuing the financing that is necessary toward a proper and timely closing of the transaction, (ii) Buyer provides written notice of at least fifteen (15) business days before the original Closing Date, and (iii) Buyer pays an additional nonrefundable deposit of Fifty Thousand Dollars ($50,000.00) to be remitted directly to the Escrow Agent, then the Buyer shall have a one-time right to extend the Closing Date for thirty (30) days. Such additional deposit shall be credited to the Purchase Price upon closing hereunder; in all other events, such fee shall be forfeited and will not be credited to the Deposit at Closing. The fee shall immediately become the property of the Seller. Closing shall occur through escrow and under escrow instructions consistent with the terms of this Agreement and otherwise mutually and reasonably satisfactory to Buyer and Seller; and*

WHEREAS, seeking an extension of settlement, the Buyer has not provided effective notice as required by Section 5.04; and

WHEREAS, seeking an extension of settlement, the Buyer has not provided the additional deposit as required by Section 5.04; and

WHEREAS, Section 1.05(b) of the PSA demands that the Buyer shall procure seller financing and, prior to settlement, in part:

> *The Note and security instruments shall be in form and content reasonably acceptable to Seller's legal counsel; and*

1

EXHIBIT A

WHEREAS, Seller has not been provided with any seller financing documents for review; and

WHEREAS, Seller is ready, willing, and able to close on November 15, 2021.

NOW, THEREFORE, for good and valuable consideration, the Parties agree as follows:

1.      Extension of the Closing Date. Closing and settlement of the PSA shall occur on or before December 3, 2021.

2.      Additional Deposit. Buyer shall remit an additional non-refundable deposit of Fifty Thousand Dollars ($50,000.00) directly to the Escrow Agent no later than 4:00pm EST on November 17, 2021.

3.      Seller Financing Documents. Buyer shall draft a Promissory Note, Deed of Trust, UCC Financing Statement, and all other legally required financial instruments for Seller's counsel's review no later than 4:00pm EST on November 24, 2021.

4.      No Further Extensions of the Closing Date. No further extensions of the Closing Date will be negotiated, and Buyer is expected to attend settlement on or before December 3, 2021. If Buyer cannot close on or before December 3, 2021, the Deposit shall be immediately forfeited to the Seller.

5.      All other terms and conditions of the PSA remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have executed this Amendment as of the dates set forth below.

SELLER:

| 11/15/21 | By: _Catherine Swain_ (SEAL) |
| Date | Catherine Swain |

| 11/15/21 | By: _Percy Swain_ (SEAL) |
| Date | Percy Swain |

BUYER:

POJO Laplata LLC

| _____ | By: _____(SEAL) |
| Date | Name (print): _____ |
|  | Title: (print): _____ |

2

EXHIBIT A

EXHIBIT A

## SECOND AMENDMENT TO THE
## PURCHASE AND SALE AGREEMENT

THIS SECOND AMENDMENT TO THE PURCHASE AND SALE AGREEMENT ("2nd Amendment") is made between CATHERINE SWAIN and PERCY SWAIN (the "Seller") and POJO LAPLATA LLC, a Maryland limited liability company (the "Buyer"). The effective date of this Amendment (the "Effective Date") shall be the date on which the last of the Seller or Buyer sign this Agreement below.

WHEREAS, on October 4, 2021, the Parties executed a Purchase and Sale Agreement ("PSA") for the property otherwise known as 10524 La Plata Road, La Plata, MD 20646 (the "Property"); and

WHEREAS, Section 5.04 of the PSA initially stipulated a closing date of November 15, 2021; and

WHEREAS, Section 5.04 of the PSA further delineated in part:

> *Notwithstanding the foregoing, and provided that (i) Buyer has duly and timely performed all of its obligations hereunder and is otherwise diligently pursuing the financing that is necessary toward a proper and timely closing of the transaction, (ii) Buyer provides written notice of at least fifteen (15) business days before the original Closing Date, and (iii) Buyer pays an additional nonrefundable deposit of Fifty Thousand Dollars ($50,000.00) to be remitted directly to the Escrow Agent, then the Buyer shall have a one-time right to extend the Closing Date for thirty (30) days. Such additional deposit shall be credited to the Purchase Price upon closing hereunder; in all other events, such fee shall be forfeited and will not be credited to the Deposit at Closing. The fee shall immediately become the property of the Seller. Closing shall occur through escrow and under escrow instructions consistent with the terms of this Agreement and otherwise mutually and reasonably satisfactory to Buyer and Seller; and*

WHEREAS, seeking an extension of settlement, the Buyer did not provide effective notice as required by Section 5.04; and

WHEREAS, seeking an extension of settlement, the Buyer did not provide the additional deposit as required by Section 5.04; and

WHEREAS, Section 1.05(b) of the PSA demands that the Buyer shall procure seller financing and, prior to settlement, in part:

> *The Note and security instruments shall be in form and content reasonably acceptable to Seller's legal counsel; and*

WHEREAS, Seller had not been provided with any seller financing documents for review prior to closing scheduled for November 15, 2021; and

WHEREAS, on November 15, 2021, the Buyer pleaded for an extension due to an inability to procure a necessary survey for purposes of the subject Deed's legal description; and

WHEREAS, further on November 15, 2021, the Parties executed a First Amendment to the Purchase and Sale Agreement ("1st Amendment"); and

EXHIBIT A

WHEREAS, the 1st Amendment extended settlement of the PSA to on or before December 3, 2021; and

WHEREAS, the 1st Amendment also agreed that the Buyer would draft a Promissory Note, Deed of Trust, UCC Financing Statement, and all other legally required financial instruments for Seller's counsel's review no later than 4:00pm EST on November 24, 2021; and

WHEREAS, Buyer did not meet the aforementioned deadline of November 24, 2021; and

WHEREAS, Seller's counsel learned through Escrow Agent that Buyer had not established appropriate business entity formation documents prior to both scheduled closings of November 15, 2021 and December 3, 2021; and

WHEREAS, by December 3, 2021, Buyer still did not produce the requisite survey and thus the Parties could not settle; and

WHEREAS, at numerous occasions, Buyer has defaulted on the PSA and 1st Amendment. Seller has provided ample opportunity for Buyer to appropriately settle, and this 2nd Amendment provides one last opportunity.

NOW, THEREFORE, for good and valuable consideration, the Parties agree as follows:

1. Settlement is hereby extended to on or before January 7, 2022 ("Closing Date"). Failure to close by January 7, 2022 will result in immediate default on the PSA and remittance of the earnest money deposit to the Seller.

2. Buyer will establish all necessary paperwork for the business entity POJO LAPLATA LLC no later than Friday, December 31, 2021. Failure to abide by this provision will result in immediate default on the PSA and remittance of the earnest money deposit to the Seller.

3. Buyer will agree in principle to the Promissory Note, Deed of Trust, UCC Financing Statement, and all other legally required financial instruments no later than Friday, December 31, 2021. All such documents will be signed at settlement. Failure to abide by this provision will result in immediate default on the PSA and remittance of the earnest money deposit to the Seller.

4. Buyer will produce a viable boundary survey on the property, including appropriate legal descriptions as demanded by the Escrow Agent (United Title & Escrow, Inc.), no later than January 6, 2022. Failure to abide by this provision will result in immediate default on the PSA and remittance of the earnest money deposit to the Seller.

5. This document will not be amended in any matter for any reason, including upon production to the Buyer for signature. Failure to abide by this provision will result in immediate default on the PSA and remittance of the earnest money deposit to the Seller.

6. All other terms and conditions of the PSA remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have executed this SECOND AMENDMENT TO THE PURCHASE AND SALE AGREEMENT as of the dates set forth below.

SELLER:

EXHIBIT A

                                    By: _____                    _____
(SEAL)
Date        Catherine Swain


                                    By: _____                    _____
(SEAL)
Date        Percy Swain


BUYER:
        POJO Laplata LLC
                                    By: _____                    _____
(SEAL)
Date        Name (print): _____
        Title: (print): _____

46107177-v1

# passwords

passwords

EXHIBIT A

website
login
password
notes

website
login
password
notes

website
login
password
notes

website
login
password
notes

website
login
password
notes

website
login
password
notes

website
login
password
notes

website
login
password
notes

website
login
password
notes

website
login
password
notes

website
login
password
notes

website
login
password
notes

website
login
password
notes

© PlanAhead, LLC

## THIRD AMENDMENT TO THE
## PURCHASE AND SALE AGREEMENT

THIS THIRD AMENDMENT TO THE PURCHASE AND SALE AGREEMENT ("Third Amendment") is made between CATHERINE SWAIN and PERCY SWAIN (the "Seller") and POJO LAPLATA LLC, a Maryland limited liability company (the "Buyer"). The effective date of this Amendment (the "Effective Date") shall be the date on which the last of the Seller or Buyer sign this Agreement below.

WHEREAS, on October 4, 2021, the Parties executed a Purchase and Sale Agreement ("PSA") for the property otherwise known as 10524 La Plata Road, La Plata, MD 20646 (the "Property"); and

WHEREAS, Section 5.04 of the PSA initially stipulated a closing date of November 15, 2021; and

WHEREAS, seeking an extension of settlement, the Buyer did not provide effective notice as required by Section 5.04; and

WHEREAS, seeking an extension of settlement, the Buyer did not provide an additional deposit as required by Section 5.04; and

WHEREAS, on November 15, 2021, the Buyer pleaded for an extension due to an inability to procure a necessary survey for purposes of the subject Deed's legal description; and

WHEREAS, further on November 15, 2021, the Parties executed a First Amendment to the Purchase and Sale Agreement; and

WHEREAS, the 1st Amendment extended settlement of the PSA to on or before December 3, 2021; and

WHEREAS, by December 3, 2021, Buyer still did not produce the requisite survey and thus the Parties could not settle; and

WHEREAS, on December 6, 2021, the Parties executed a Second Amendment to the Purchase and Sale Agreement, extending settlement to January 7, 2022, along with other operative and material terms; and

1

# EXHIBIT A

EXHIBIT A

WHEREAS, also on December 6, 2021, Buyer deposited an additional Fifty-Five Thousand Dollars ($55,000.00) to United Title and Escrow, Inc. (the "Escrow Agent"); and

WHEREAS, the Escrow Agent now holds a total of One Hundred and Five Thousand Dollars ($105,000.00) in escrow on behalf of the Buyer towards the purchase price (the "Entire Deposit"); and

WHEREAS, Buyer intends to provide some consideration for Buyer's inability to close on time; and

NOW, THEREFORE, for good and valuable consideration, the Parties agree as follows:

1.      Upon execution of this Third Amendment, the Escrow Agent will promptly release the Entire Deposit to the Seller. This Entire Deposit is non-refundable and will be credited towards the purchase price of the Property.

2.      This document will not be amended in any matter for any reason, including upon production to the Buyer for signature. Failure to abide by this provision will result in immediate default on the PSA and remittance of the Entire Deposit to the Seller.

3.      All other terms and conditions of the PSA remain in full force and effect.

IN WITNESS WHEREOF, the parties hereto have executed this THIRD AMENDMENT TO THE PURCHASE AND SALE AGREEMENT as of the dates set forth below.

*[Signatures on Next Page]*

2

EXHIBIT A

**EXHIBIT A**

SELLER:

_12 / 08 / 2021_

Date

By: _Catherine Swain_____ (SEAL)

Catherine Swain

_____

Date

By: _____ (SEAL)

Percy Swain

BUYER:

_12 / 08 / 2021_

Date

POJO Laplata LLC

By: _Michael Postal_____ (SEAL)

Name (print): _Michael Postal_____

Title: (print): _Managing Member_____

3

Doc ID: ba1e1a6fd6130c6a6b5cc34f13a161bdcad280f0

EXHIBIT A